IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT LEE, JR., individually and for all others similarly situated,<br>   Plaintiff,<br> v.<br><br>PENNSYLVANIA DEPARTMENT OF CORRECTIONS,<br>   Defendant. | Case No. _____<br><br>JURY TRIAL DEMANDED |

## CLASS / COLLECTIVE ACTION COMPAINT

Robert Lee, Jr. ("Plaintiff"), by and through his undersigned counsel, hereby makes the following allegations against the Pennsylvania Department of Corrections ("Defendant"), concerning his acts and status upon actual knowledge and concerning all other matters upon information, belief and the investigation of his counsel:

### NATURE OF THE ACTION

1. Plaintiff contends that Defendant has violated the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq.* ("FLSA") and the Pennsylvania Minimum Wage Act of 1968, 43 P.S. §§ 333.101, *et seq.* ("PMWA") by knowingly suffering or permitting Corrections Officer Trainees and Corrections Officer 1s ("CO1s") to perform approximately 45 minutes of unpaid post-shift work each day.

### JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 29 U.S.C. §216(b) and 28 U.S.C. §1331.

3. This Court has supplemental jurisdiction over Plaintiff's Pennsylvania claims pursuant to 28 U.S.C. § 1367, because these claims arise from the same occurrence or transaction

as Plaintiff's FLSA claim (*i.e.,* Defendant's failure to pay wages for all hours worked) and are so related to this claim as to form part of the same case or controversy.

4. Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(2), because Plaintiff resides in this District, Plaintiff worked for Defendant in this District, Defendant engaged in the wrongful conduct at issue in this District, Plaintiff suffered the losses at issue in this District, Defendant has significant business contacts in this District and actions and omissions giving rise to Plaintiff's claims occurred in this District.

## PARTIES

5. Plaintiff is an adult citizen of the Commonwealth of Pennsylvania who resides in Philadelphia County. In October 2017, Defendant hired Plaintiff to work as a full-time Corrections Officer Trainee at the SCI Chester prison in Chester, PA. Plaintiff worked in this position until his termination in October 2018. As discussed below, Plaintiff is personally familiar with, and was personally affected by, the policies and practices described in this Complaint.

6. The Pennsylvania Department of Corrections ("Defendant") is a state government entity with a Central Office in Mechanicsburg, PA (Cumberland Co.). *See* https://www.cor.pa.gov/About%20Us/ContactUsHotlineandRight-To-Know/Pages/Contact.aspx (accessed January 8, 2019). Defendant employs approximately 15,000 workers, including thousands of Corrections Officer Trainees and CO1s, and is responsible for overseeing the operations of 24 state correctional institutions, among other facilities and programs. *See* https://www.cor.pa.gov/About%20Us/Pages/CONTACT%20US%20-%20About%20Us.aspx (accessed January 8, 2019).

## BACKGROUND FACTS

7. Defendant employs Corrections Officer Trainees and CO1s to monitor prisoner movement and activities, make rounds and conduct head counts and security checks, observe

2

prisoner conduct and behavior and respond to emergency situations in all 24 of its correctional institutions.  *See https://www.governmentjobs.com/careers/pabureau/jobs/2043498/corrections-officer-trainee-exam?keywords=correction%20officer&pagetype=jobOpportunitiesJobs* (accessed January 8, 2019).

8. Upon hire, all Corrections Officer Trainees are required to successfully complete a 12-month training period before receiving a promotion to the CO1 position.  *Id.*

9. Because Defendant's prisons operate on a 24-hour basis, Defendant schedules all Corrections Officer Trainees and CO1s to work one of three eight-hour shifts that run from 6:00am to 2:00pm, from 2:00pm to 10:00pm and from 10:00pm to 6:00am.

10. With few exceptions for specifically-approved overtime hours, usually less than one hour per week, Defendant pays Corrections Officer Trainees and CO1s only for their scheduled time (i.e., from their scheduled shift start-time to their scheduled shift end-time) and nothing more.

## UNPAID POST-SHIFT WORK

11. Defendant requires all Corrections Officer Trainees and CO1s to remain at their assigned posts until they are relieved.

12. Corrections Officer Trainees and CO1s are never freed of work-related responsibilities at their scheduled shift end-time because the employee replacing them has to complete a number of tasks before arriving at the post, including: waiting in a single-file line to pass through security, receiving their daily post assignment from a Lieutenant, scanning their fingerprint and entering their payroll number to clock-in, walking to their post, performing an inventory of their equipment (including handcuffs and case, pepper spray and case, keys and a radio) and reviewing a log of events from the prior shift.  After the employee replacing them

completes these tasks, Corrections Officer Trainees and CO1s must engage in a required information exchange about any events that occurred on the last shift and any instructions for the next shift. After completing the information exchange, Corrections Officer Trainees and CO1s must walk to the equipment window, wait in a single-file line to return their equipment, pass through security, scan their fingerprint and enter their payroll number to clock-out and leave the building. Completing all of these required activities typically causes Corrections Officer Trainees and CO1s to end their workday approximately 45 minutes after their scheduled shift end-time.

13. Plaintiff routinely clocked-out and left work 45 minutes after his scheduled shift end-time as a result of having to wait for the employee replacing him to arrive at the post, complete the required information transfer, walk to the equipment window, wait in line to return his equipment, pass through security and leave the building.

14. Plaintiff has witnessed many other Corrections Officer Trainees and CO1s clock-out and leave work approximately 45 minutes after their scheduled shift end-times as a result of having to wait for the employee replacing them, complete the required information transfer, walk to the equipment window, wait in line to return their equipment, pass through security and leave the building.

15. Because Corrections Officer Trainees and CO1s do not clock-out until after they have completed all of their post-shift work, Defendant's timekeeping system captures all of this work. However, Defendant maintains internal systems or procedures that cause no wages to be paid for this time.

16. Defendant has actual and constructive knowledge that its Corrections Officer Trainees and CO1s are not paid for their post-shift work because: it controls all systems and procedures relating to their shift-end activities, it controls the timeclock they use to record their

shift-end punch, it maintains a video surveillance system that records when they pass through security checkpoints and leave the facility and it controls the systems and procedures used to designate their time as paid or unpaid.

17. Defendant has actual and constructive knowledge that its Corrections Officer Trainees and CO1s are not paid for their post-shift work because Plaintiff and many other Corrections Officer Trainees and CO1s complain to Lieutenant Cortina four to five times each week about clocking-out late as a result of having to wait for relief workers to arrive at the post and having to stand in line to turn-in their equipment. Lieutenant Cortina typically responds to these complaints by saying: "We're doing the best we can."

18. Defendant has actual and constructive knowledge that its Corrections Officer Trainees and CO1s are not paid for their post-shift work because Plaintiff and many other Corrections Officer Trainees and CO1s have spoken to Captain Kyler and Sergeant Dunlap about clocking-out late as a result of specific circumstances, including: having to complete required paperwork, having to wait for relief workers to arrive at the post, having to complete required information transfers and having to wait in line to return their equipment.

19. Despite knowing that Corrections Officer Trainees and CO1s routinely clock-out approximately 45 minutes after their scheduled shift-end time each day, Defendant has never paid these employees for their post-shift work or done anything to ensure they could be relieved of all duties and leave work at their scheduled shift end-time.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

20. Plaintiff brings his FLSA claim as a collective action pursuant to 29 U.S.C. § 216(b) for all people who have worked as a Corrections Officer Trainee and/or CO1 for the Pennsylvania

Department of Corrections in any week during the maximum limitations period (the "FLSA Collective").  Plaintiff reserves the right to amend this definition as necessary.

21. Plaintiff belongs to the FLSA Collective because he worked as a Corrections Officer Trainee in the SCI Chester prison during the relevant period.

22. Although Plaintiff and the FLSA Collective members potentially worked in different prison locations, this action may be properly maintained as a collective action because, among other things:

    a. they had the same job duties;

    b. they worked under the same terms and conditions of employment;

    c. they received the same training;

    d. they were governed by the same timekeeping, hours of work, overtime and compensation policies and procedures;

    e. they used the same timekeeping systems; and

    f. they were paid through the same payroll system.

23. Plaintiff and the FLSA Collective members do not meet any test for exemption under the FLSA.

24. Plaintiff estimates that the FLSA Collective, including both current and former employees over the relevant period, will include several thousand members.  The precise number of FLSA Collective members should be readily available from Defendant's personnel, scheduling, time and payroll records, and from input received from the class members as part of the notice and "opt-in" process provided by 29 U.S.C. §216(b).

## PENNSYLVANIA CLASS ACTION ALLEGATIONS

25. Plaintiff brings his PMWA claim as a class action pursuant to Fed. R. Civ. P. 23 for all Pennsylvania residents who have worked as a Corrections Officer Trainee and/or CO1 for the Pennsylvania Department of Corrections in any week during the last three years and have not

received all overtime wages owed for all of the overtime hours they worked (the "PA Class"). Plaintiff reserves the right to amend this definition as necessary.

26. Plaintiff is a member of the PA Class, because he is a Pennsylvania resident who worked as a Corrections Officer Trainee in the SCI Chester prison during the relevant period and did not receive all overtime wages owed for all of the overtime hours he worked.

27. Class treatment of Plaintiff's PMWA claim is appropriate because the PA Class satisfies the requirements of Fed. R. Civ. P. 23.

28. The PA Class is so numerous that joinder of all its members would be impracticable. Defendant employs approximately 15,000 workers, many of whom are employed as Corrections Officer Trainees and/or CO1s, meaning that joining all of their claims would be impracticable. *See* https://www.cor.pa.gov/About%20Us/Pages/CONTACT%20US%20-%20About%20Us.aspx (accessed January 8, 2019)

29. Plaintiff's claims are typical of the claims belonging to the PA Class. Plaintiff is similarly-situated to the PA Class members because he worked for Defendant under the common policies and procedures identified above, and was denied legally-required wages for his work as a result of Defendant's common course of wrongful conduct.

30. There are material questions of law or fact common to the members of the PA Class because, as discussed throughout this filing, Defendant engaged in a common course of conduct that violated the PA Class members' legal rights. The legality of Defendant's policies will be demonstrated by applying generally applicable legal principles to common evidence. Any individual questions Plaintiff's claims present will be far less central to this litigation than the numerous common questions of law and fact, including:

    a.    whether Plaintiff and the PA Class members have been subjected to materially-identical timekeeping and compensation policies;

    b.    whether Defendant maintains policies or procedures to keep accurate, contemporaneous records of the hours worked by Plaintiff and the PA Class members;

    c.    whether Defendant maintains policies or procedures to ensure that Plaintiff and the PA Class members are properly paid for all hours they work;

    d.    whether Defendant suffers and permits Plaintiff and the PA Class members to spend approximately 45 minutes per day on unpaid post-shift activities;

    e.    whether Defendant intentionally denied Plaintiff and the PA Class members overtime premium wages owed under the PMWA; and

    f.    whether Defendant should be required to pay compensatory damages, liquidated damages and/or attorneys' fees and costs, or enjoined from continuing the wage and hour violations alleged in this Complaint.

31. Plaintiff will fairly and adequately assert and protect the interests of the PA Class because: there is no apparent conflict of interest between Plaintiff and the PA Class members; Plaintiff's counsel have successfully prosecuted many complex class actions, including state-law wage and hour class actions, and will adequately prosecute these claims; and Plaintiff has adequate financial resources to assure that the interests of the PA Class will not be harmed because his counsel has agreed to advance the costs and expenses of litigation on the Class' behalf contingent upon the outcome of this litigation consistent with Pa. R. Prof. Conduct 1.8(e)(1).

32. Allowing this action to proceed as a class action will provide a fair and efficient method for adjudication of the issues presented by this controversy because issues common to the Class predominate over any questions affecting only individual members; no difficulties are likely to be encountered in the management of this litigation as a class action; and the claims addressed in this Complaint are not too small to justify the expenses of class-wide litigation, nor are they

likely to be so substantial as to require the litigation of individual claims.

33. Allowing Plaintiff's PMWA claim to proceed as a class action will be superior to requiring the individual adjudication of each PA Class member's claim, since requiring several thousand hourly-paid employees to file and litigate individual wage claims will place an undue burden on the Class members, Defendant and the Courts.  Class action treatment will allow a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expenses if these claims were brought individually.  Moreover, as the damages suffered by each Class member are relatively small, the expenses and burdens associated with individual litigation would make it prohibitively impractical for them to bring individual claims.  Further, the presentation of separate actions by individual Class members could create a risk for inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant and/or substantially impair or impede the ability of the Class members to protect their interests.

34. Allowing Plaintiff's claims to proceed as a class action is also appropriate because Pennsylvania's wage laws expressly permit private class action lawsuits to recover unpaid wages.

## COUNT I
## Violation Of The FLSA
## Unpaid Overtime Wages

35. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

36. Defendant is an "employer" as defined by 29 U.S.C. § 203(d).

37. Plaintiff and the FLSA Collective members are "employees" as defined by 29 U.S.C. § 203(e)(1).

38. The wages Defendant paid to Plaintiff and the FLSA Collective members are "wages" as defined by 29 U.S.C. § 203(m).

39. Defendant is an "enterprise engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

40. 29 U.S.C. § 216(b) expressly allows private plaintiffs to bring collective actions to enforce employers' failure to comply with the FLSA's requirements.

41. Throughout the relevant period, Defendant has been obligated to comply with the FLSA's requirements, Plaintiff and the FLSA Collective members have been covered employees entitled to the FLSA's protections, and Plaintiff and the FLSA Collective members have not been exempt from receiving wages required by the FLSA for any reason.

42. 29 U.S.C. § 207(a)(1) requires employers to pay their employees an overtime rate, equal to at least 1½ times their regular rate of pay, for all hours worked in excess of 40 hours per week.

43. Defendant has intentionally violated this provision of the FLSA with respect to the FLSA Collective by maintaining common timekeeping and compensation policies and practices that include: failing to maintain accurate, contemporaneous records of the FLSA Collective members' work; requiring the FLSA Collective members to routinely spend approximately 45 minutes per day on post-shift work; and failing to pay the FLSA Collective members legally-required overtime premium wages for their required post-shift work.

44. By engaging in this conduct, Defendant has acted with willful and/or reckless disregard for Plaintiff's and the FLSA Collective members' rights under the FLSA.

45. Plaintiff and the FLSA Collective members have been harmed as a direct and proximate result of Defendant's unlawful conduct because they have been deprived of overtime

premium wages owed for overtime-eligible work they performed and from which Defendant derived a direct and substantial benefit.

46. For all the reasons stated above, Plaintiff and the FLSA Collective members are similarly-situated individuals within the meaning of the FLSA, 29 U.S.C. §216(b).

## COUNT II
## VIOLATION OF THE PMWA
## Unpaid Overtime Wages

47. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

48. Defendant is a covered employer required to comply with the PMWA's mandates.

49. Plaintiff is seeking to recover "wages" as that term is defined by the PMWA.

50. Plaintiff and the PA Class members are employees entitled to the PMWA's protections, and, during the relevant period, were not exempt from receiving wages payable under the PMWA or its enabling Regulations for any reason.

51. PMWA Section 4(c) requires employers to pay their employees overtime compensation of "not less than one and one-half times the employee's regular rate" for all hours worked over 40 in a given workweek. *See* 43 P.S. § 333.104(c).

52. Under the PMWA, overtime is calculated based on the number of hours worked in a "workweek", defined in controlling regulations as "a period of 7 consecutive days". *See* 34 Pa. Code § 231.42.

53. Throughout the relevant period, PMWA Section 8 required Defendant to "keep a true and accurate record of the hours worked by each employee and the wages paid to each." *See* 43 P.S. § 333.108.

54. The PMWA provides that "any agreement between the employer and the worker" does not serve as a defense to civil actions brought to recover wages owed under the Act.

55. Defendant has intentionally violated these provisions of the PMWA with respect to the PA Class members by maintaining common timekeeping and compensation policies and practices that include: failing to maintain accurate, contemporaneous records of the PA Class members' work; requiring the PA Class members to regularly spend approximately 45 minutes per day on post-shift work; and failing to pay the PA Class members legally-required overtime premium wages for their required post-shift work.

56. By engaging in this conduct, Defendant has acted with willful and/or reckless disregard for Plaintiff's and the PA Class members' rights under the PMWA.

57. There is no language in the PMWA, no exception to the PMWA or its enabling Regulations, or any applicable provision elsewhere in Pennsylvania law that permits Defendant to avoid paying Plaintiff and the PA Class members for their overtime work, so Defendant has no good faith justification or defense for failing to pay Plaintiff and the PA Class members all wages mandated by the PMWA.

58. Defendant's failure to pay Plaintiff and the PA Class members all overtime wages owed for all hours they work beyond 40 per week violates the PMWA and has caused them to suffer economic harm.

59. Plaintiff and the PA Class members have been harmed as a direct and proximate result of the unlawful conduct described here, because they have been deprived of overtime premium wages owed for overtime-eligible work they performed and from which Defendant derived a direct and substantial benefit.

WHEREFORE, Plaintiff respectfully prays for an Order:

a. Certifying this matter to proceed as a collective action with respect to Count I and as a class action with respect to Count II;

b. Approving Plaintiff as an adequate Class representative;

c. Appointing Stephan Zouras, LLP to serve as Class Counsel;

d. Finding that Defendant willfully violated the applicable provisions of the FLSA and PMWA by failing to pay required overtime wages due to Plaintiff and the FLSA Collective and PA Class members;

e. Granting judgment in favor of Plaintiff and the FLSA Collective and PA Class members against Defendant on Counts I and II;

f. Awarding all available compensatory damages in amounts to be determined;

g. Awarding all available liquidated damages in amounts to be determined;

h. Awarding pre-judgment interest on all compensatory damages due;

i. Awarding a reasonable attorney's fee and reimbursement of all costs and expenses incurred in litigating this action;

j. Awarding equitable and injunctive relief precluding the continuation of the policies and practices pled in this Complaint;

k. Awarding any further relief the Court deems just, necessary and proper; and

l. Maintaining jurisdiction over this action to ensure Defendant's compliance with the foregoing mandates.

## JURY DEMAND

Plaintiff hereby demands a trial by jury in the above-captioned matter.

                                              Respectfully submitted,

Dated: January 16, 2019        */s/ David J. Cohen*
                                          David J. Cohen
                                          STEPHAN ZOURAS, LLP
                                          604 Spruce Street
                                          Philadelphia, PA  19106
                                          (215) 873-4836
                                          dcohen@stephanzouras.com

                                          James B. Zouras (*pro hac* forthcoming)
                                          Ryan F. Stephan (*pro hac* forthcoming)
                                          STEPHAN ZOURAS, LLP
                                          100 North Riverside, Suite 2150
                                          Chicago, IL  60606
                                          312-233-1550
                                          rstephan@stephanzouras.com
                                          jzouras@stephanzouras.com

                                          *Attorneys for Plaintiff*