# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT LEE, JR., individually and for all others similarly situated, | |
| Plaintiff, | CIVIL ACTION NO. 19-241 |
| v. | |
| MARIROSA LAMAS, MICHAEL WENEROWICZ and TY STANTON, in their individual capacities, | |
| Defendants. | |

## MEMORANDUM

**Rufe, J.**                                                                        **December 26, 2019**

Plaintiff Robert Lee, Jr. filed this proposed collective action[1] against Defendants Marirosa Lamas, Michael Wenerowicz, and Ty Stanton, on behalf of all similarly situated people, alleging that the Defendants violated the overtime provisions of the federal Fair Labor Standard Act[2] (FLSA) and the Pennsylvania Minimum Wage Act[3] (PMWA) by requiring Corrections Officer Trainees and Corrections Officer 1s ("COs") to perform approximately 45 minutes of unpaid post-shift work each day. Defendants have moved to dismiss the Complaint for lack of subject matter jurisdiction, alleging that they are entitled to sovereign immunity. For the reasons that follow, the motion will be denied.

---

[1] Plaintiff asserts that the "precise number of FLSA Collective members should be readily available from Defendants' personnel, scheduling, time and payroll records, and from input received from the class members as part of the notice and 'opt-in' process provided by 29 U.S.C. §216(b)." Amended Complaint [Doc. No. 8] at 9.

[2] 29 U.S.C. § 207(a).

[3] 43 Pa. Stat. § 333.104.

## I. BACKGROUND[4]

Plaintiff worked for about a year as a Corrections Officer Trainee at the State Correctional Institution Chester. Because prisons operate on a 24-hour basis, COs are scheduled to work one of three eight-hour shifts that run from 6:00am to 2:00pm, from 2:00pm to 10:00pm and from 10:00pm to 6:00am. Generally, COs are paid only for their eight hour shift.

However, at the end of each shift, COs are required to remain at their post until the next shift arrives to replace them. But before the replacement can take place, the COs on the next shift have to wait in a single-file line to pass through security, receive their daily post assignments from a Lieutenant, scan their fingerprints and enter their payroll numbers to clock-in, walk to their post, perform an inventory of their equipment, and review a log of events from the prior shift. Then, the COs whose shifts have concluded are required to brief the incoming COs about any events that occurred on the previous shift and convey any specific instructions for the next shift. Finally, in order to leave, COs have to walk to the equipment window, wait in a single-file line to return their equipment, pass through security, scan their fingerprints, and enter their payroll numbers to clock-out.

Therefore, Lee alleges that, at the end of each shift, COs have about 45 minutes of uncompensated work-related responsibilities. Although Lee concedes that the Pennsylvania Department of Corrections ("DOC") maintains FLSA-compliant and PMWA-compliant policies, he alleges that the Defendants maintained internal systems and procedures at SCI Chester that lead to COs not receiving compensation for their post-shift work.

Lee initially filed suit only against the DOC,[5] which moved to dismiss on the basis of

---

[4] Unless otherwise stated, the background is drawn primarily from the Amended Complaint and at this stage of the proceedings is presumed to be true.

[5] Doc. No. 1.

sovereign immunity.[6] Lee then filed an Amended Complaint naming Lamas, Wenerowicz, and Stanton as defendants, in their individual capacities.[7] Lee alleges that Lamas, who is the Superintendent of SCI Chester, and Wenerowicz, who is the DOC's Deputy Secretary Eastern Region, are responsible for ensuring that DOC policies are followed at SCI Chester. Lee further alleges that Stanton, who is the DOC's Bureau of Human Resources Director, is responsible for ensuring that DOC's Human Resources policies are followed at the prison. According to Lee, all of the Defendants have significant control over the terms and conditions of the employment of COs and are also responsible for devising, directing, implementing, and supervising the wage and hour practices and policies relating to this action.

Defendants now move to dismiss both claims in Lee's Amended Complaint for lack of subject matter jurisdiction. Defendants assert that the Eleventh Amendment bars Lee's FLSA claim because, although Lee has now named individual defendants, the State remains the real party in interest. Defendants also asserts that they are entitled to state sovereign immunity on the PMWA claim.

## II. LEGAL STANDARD

A defendant may move to dismiss a civil action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).[8] A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack.[9] A facial challenge is where, as here, a defendant "challenges subject matter jurisdiction without disputing the facts alleged in the

---

[6] Doc. No. 2.

[7] Doc. No. 8.

[8] *See* Fed. R. Civ. P. 12(b)(1).

[9] *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016); *see also* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350 (3d ed. 2016).

3

complaint."[10] In such a case, the court is required to "consider the allegations of the complaint as true."[11] However, because "[f]ederal courts are courts of limited jurisdiction . . .[12] [i]t is to be presumed that a cause lies outside this limited jurisdiction,[13] and the burden of establishing the contrary rests upon the party asserting jurisdiction."[14] Immunity under the Eleventh Amendment challenges the court's subject matter jurisdiction, and thus is properly raised under Rule 12(b)(1).[15] If the Court determines that it lacks subject matter jurisdiction, Federal Rule of Civil Procedure 12(h)(3) requires dismissal.[16]

### III. DISCUSSION

#### A. FLSA Claim

"[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court."[17] Pennsylvania has expressly withheld its consent to be sued[18] and the FLSA is not a valid abrogation of a state's Eleventh Amendment immunity.[19] Moreover, "[a]lthough the language of the Eleventh Amendment refers only to 'States,' the Supreme Court has held that the immunity extends to entities that are considered

---

[10] *Id.* (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)).

[11] *Id.* (quoting *Petruska*, 462 F.3d at 302 n.3).

[12] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

[13] *Id.* (citing *Turner v. Bank of North America*, 4 U.S. (4 Dall.) 8, 11 (1799)).

[14] *Id.* (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182–183 (1936)); *Cf. Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (citations omitted) ("The party invoking federal jurisdiction bears the burden of establishing [standing]."); *see also* 5B Wright & Miller, *supra*, § 1350, at 147–55.

[15] *Coleman v. Sec'y U.S. Dep't of Homeland Sec.*, 649 F. App'x 128, 129 (3d Cir. 2016).

[16] *See* Fed. R. Civ. P. 12(h)(3).

[17] *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (citing *Ford Motor Co. v. Department of Treasury of Indiana*, 323 U.S. 459, 464 (1945)); *see also Karns v. Shanahan*, 879 F.3d 504, 512 (3d Cir. 2018) (quoting *Lombardo v. Pa., Dept of Pub. Welfare*, 540 F.3d 190, 194 (3d Cir. 2008)); *Hans v. Louisiana*, 134 U.S. 1 (1890).

[18] *See Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (citing 42 Pa. C.S. § 8521(b)).

[19] *Alden v. Maine*, 527 U.S. 706, 712 (1999); *see also Michigan Corr. Org. v. Michigan Dep't of Corr.*, 774 F.3d 895, 902 (6th Cir. 2014); *Nunez v. Indiana Dep't of Child Servs.*, 817 F.3d 1042, 1043 (7th Cir. 2016).

arms of the state."[20] The Third Circuit has held that the "Pennsylvania Department of Corrections is thus immune from suit in federal court pursuant to the Eleventh Amendment."[21] This protection from suit extends to state officials sued in their official capacities for monetary damages.[22] However, the Eleventh Amendment does not protect state officials from being sued in their individual capacity.[23] Therefore, "even a suit for money damages may be prosecuted against a state officer in his individual capacity for unconstitutional or wrongful conduct fairly attributable to the officer himself, so long as the relief is sought not from the state treasury but from the officer personally."[24]

However, even "[w]hen the suit is brought only against state officials, a question arises as to whether that suit is a suit against the State itself" because "[t]he Eleventh Amendment bars a suit against state officials when 'the state is the real, substantial party in interest.'"[25] This is because "allowing an action to proceed simply because the complaint names a state official in his or her individual capacity 'would be to adhere to an empty formalism and to undermine the principle . . . that Eleventh Amendment immunity represents a real limitation on a federal court's

---

[20] *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 545 (3d Cir. 2007), *amended on reh'g* (Mar. 8, 2007) (citing *Regents of the Univ. of California v. Doe*, 519 U.S. 425, 429 (1997); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984)).

[21] *Kreutzberger v. Pennsylvania Dep't of Corr.*, 684 F. App'x 107, 108 (3d Cir. 2017).

[22] *A.W. v. Jersey City Pub. Sch.*, 341 F.3d 234, 238 (3d Cir. 2003) (citations omitted).

[23] *See, e.g.*, *Marin v. Sec'y of Pennsylvania*, 715 F. App'x 139, 141 (3d Cir. 2017) (citing *Hafer v. Melo*, 502 U.S. 21, 31 (1991)); *Slinger v. New Jersey*, 366 F. App'x 357, 360 (3d Cir. 2010) ("[T]he Eleventh Amendment does not bar suits brought against state officials in their individual capacities, even if the actions which are the subject of the suit were part of their official duties.").

[24] *Alden*, 527 U.S. at 756-57 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 237–238 (1974); *Ford Motor Co.*, 323 U.S. at 462).

[25] *Pennhurst*, 465 U.S. at 101 (quoting *Ford Motor Co.*, 323 U.S. at 464); *see also Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 270 (1997)); *Haybarger v. Lawrence Cty. Adult Prob. & Parole*, 551 F.3d 193, 198 (3d Cir. 2008) (citing *Regents of the Univ. of Cal.*, 519 U.S. at 429) (explaining that the Eleventh Amendment bars suit against subunits of the State when the state is deemed to be the real party in interest.); *Hindes v. F.D.I.C.*, 137 F.3d 148, 165 (3d Cir. 1998) ("In general, the Eleventh Amendment prevents suits in federal court against states, or state officials if the state is the real party in interest.").

federal-question jurisdiction.'"[26] "[T]he general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter."[27] More specifically, a suit brought against state officials is actually a suit "against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act."[28]

Lee's claims are against Lamas, Wenerowicz, and Stanton in their individual capacities, and therefore, he asserts that the Eleventh Amendment does not insulate the Defendants from suit. However, Defendants argue that Lee's suit "nonetheless effectively states a claim against the Commonwealth itself."[29]

However, at this time, there is no basis for determining that a ruling against the Defendants would "impose a liability which must be paid from public funds."[30] Lee alleges that Pennsylvania's compensation system complies with the FLSA but that the individual Defendants' acted to deny him, as well as others similarly situated, proper overtime pay. Thus, based on the allegations in the Amended Complaint, Lee is seeking relief "not from the state treasury but from the officer personally" for "wrongful conduct fairly attributable to the officer

---

[26] *Martin v. Wood*, 772 F.3d 192, 195 (4th Cir. 2014) (quoting *Coeur d'Alene Tribe*, 521 U.S. at 270).

[27] *Pennhurst*, 465 U.S. at 101 (quoting *Hawaii v. Gordon*, 373 U.S. 57, 58 (1963)).

[28] *Id.* at 101 n.11 (quoting *Dugan v. Rank*, 372 U.S. 609, 620 (1963)).

[29] *Martin*, 772 F.3d at 195–96. Defendants do not dispute that public officials may be sued in their individual capacity under the FLSA. The Third Circuit has held that "the [Family and Medical Leave Act (FMLA's)] similarity to the FLSA indicates that Congress intended for courts to treat the FMLA the same as the FLSA," and also held that "public officials may be sued in their individual capacities under the" FMLA. *Haybarger*, 667 F.3d at 416; *see also Luder v. Endicott*, 253 F.3d 1020, 1022 (7th Cir. 2001) (holding that public officials may be sued in their individual capacities under FLSA).

[30] *Edelman v. Jordan*, 415 U.S. 651 (1974); *Blake v. Kline*, 612 F.2d 718, 723 (3d Cir. 1979) ("The most important factor in the determination of eleventh amendment immunity is whether judgment will have to be paid from the state treasury."). Situations which have been found impose a liability on the sovereign include when the requested judgment would impact property owned by the sovereign, *see State of Hawaii*, 373 U.S. at 58, or would require the sovereign to return funds already collected. *See Burgos v. Milton*, 709 F.2d 1, 2 (1st Cir. 1983).

himself."[31] Moreover, neither a state's voluntary decision to indemnify its employees who are sued in federal court,[32] nor the defendants' inability to satisfy the judgment, functions to remove Eleventh Amendment immunity.[33] Furthermore, because Lee alleges that Pennsylvania's compensation scheme was lawful, this suit does not interfere with the "primary purpose of the eleventh amendment" which "is to assure that the federal courts do not interfere with a state's public policy and its administration of internal public affairs."[34] Therefore, on the current limited record, the Eleventh Amendment does not bar Lee's suit.[35]

---

[31] *Alden*, 527 U.S. at 756–57.

[32] *Farid v. Smith*, 850 F.2d 917, 923 (2d Cir. 1988).

[33] *Huang v. Johnson*, 251 F.3d 65, 70 (2d Cir. 2001); *Luder*, 253 F.3d at 1023.

[34] *Blake*, 612 F.2d at 725.

[35] The Defendants cite to three cases from other Circuits—*Luder v. Edicott*, *Henley v. Simpson*, and *Martin v. Wood*—for the proposition that Lee's claims should be dismissed because the Commonwealth is the real party in interest. However, those cases are not binding on this Court. Moreover, *Luder* and *Henley* are distinguishable, *see Henley v. Simpson*, 527 F. App'x 303, 306 (noting the "fact-specific nature of real-party-in-interest inquiries"), and the Court is not persuaded by the Fourth Circuit's reasoning in *Martin*. First, *Luder* is inapposite because, unlike here, the plaintiff in *Luder* asserted that the Wisconsin DOC did not have a FLSA compliant policy. *See Luder*, 253 F.3d at 1023. Therefore, the *Luder* plaintiff sought "to accomplish exactly what they would accomplish were they allowed to maintain this suit against the state and did so successfully: they are seeking to force the state to accede to their view of the Act and to pay them accordingly." *Id.* at 1024. In fact, in *Luder* the Seventh Circuit explicitly distinguished cases, "where the state had a firm policy of complying with the FLSA." *Id.* Thus, because Lee alleges that the Pennsylvania DOC's stated policy complied with FLSA, his suit is only against the officials who failed to properly follow that policy. *See Williams v. Richards*, No. 16-525, 2016 WL 5872450, at *3–4 (W.D. Pa. Oct. 7, 2016) (distinguishing *Luder* in a FLSA suit alleging that individual defendants failed to comply with "with PennDOT's general policy of paying such employees for all time worked"). Second, in an unpublished opinion in *Henley*, the Fifth Circuit based its decision on *Luder* because the plaintiff in *Henley* sought to "cause the State of Mississippi 'to accede to their view of the [State's compensation policy] and pay them accordingly.'" *Henley*, 527 F. App'x at 307 (quoting *Luder*, 253 F.3d at 1024). Thus, *Henley* is also inapplicable here because Lee does not challenge the DOC's compensation policy. Third, while the Fourth Circuit's opinion in *Martin* is on point, the Court is not persuaded by its reasoning, and is not convinced that the Third Circuit would dismiss a claim based on sovereign immunity when state officials act against state policy. *See Williams v. Richards*, 2016 WL 5872450, at *4 (holding that sovereign immunity did not apply to public officials sued in their individual capacities under FLSA for failing to comply with the state's policy requiring proper overtime pay); *Haybarger v. Lawrence Cty. Adult Prob. & Parole*, 2013 WL 307823, at *2 (W.D. Pa. Jan. 25, 2013) (holding after remand from the Third Circuit that sovereign immunity did not apply to public official sued in their individual capacity under the FMLA). Therefore, the Court will not grant dismissal on such grounds on an undeveloped record.

### B. PMWA Claim

Under the Pennsylvania Constitution, "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity."[36] The parties agree that this immunity has not been waived but Lee argues that the Defendants acted outside the scope of their duties because his "claims arise from Defendants' knowing and intentional violation of DOC wage and hour policies."[37]

"Pennsylvania has accepted the Restatement (Second) of Agency's definition of conduct 'within the scope of employment.'"[38] According to the Restatement, "conduct is within the scope of employment if, but only if: (a) it is the kind [the employee] is employed to perform; (b) it occurs substantially within the authorized time and space limits [and] (c) it is actuated, at least in part, by a purpose to serve the master...."[39] Significantly, even actions that violate the employer's policy are considered to be within the scope of employment when the actions are motivated by a purpose to serve the employer.[40]

However, whether Defendants' alleged conduct was within their scope of employment cannot be resolved in the absence of a developed record. Assuming Lee's allegations to be true, the Court cannot determine whether Defendants' alleged actions were taken to serve the

---

[36] 1 Pa. C.S. § 2310 (citing Pa. Const. art. 1, § 11).

[37] Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss [Doc. No. 13-1] at 12 (citing *Sullenberger v. Jobe*, 2006 WL 3489870, *2 (W.D. Pa. Dec. 1, 2006)).

[38] *Brumfield v. Sanders*, 232 F.3d 376, 380 (3d Cir. 2000) (quoting *Butler v. Flo–Ron Vending Co.*, 557 A.2d 730 (Pa. Super. 1989); *Aliota v. Graham*, 984 F.2d 1350, 1358 (3rd Cir. 1993)).

[39] *Id.* (quoting Restatement (Second) Agency § 228).

[40] *Brumfield*, 232 F.3d at 381 (citing *Butler*, 557 A.2d at 736-37); *Kull v. Guisse*, 81 A.3d 148, 158 (Pa. Commw. Ct. 2013) (citations omitted).

purposes of the DOC. Given this outstanding factual issue, "the Court declines, at this time, to cloak the Defendants with the protection of sovereign immunity."[41]

**IV.     CONCLUSION**

For the reasons stated above, the motion to dismiss filed by Defendants Marirosa Lamas, Michael Wenerowicz, and Ty Stanton will be **DENIED**. An order will be entered.

---

[41] *Robinson v. Beard*, No. 08-3156, 2013 WL 6022124, at *9 (E.D. Pa. Nov. 13, 2013).