IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT LEE, JR., individually and for all others similarly situated,<br><br>           Plaintiff,<br><br>    v.<br><br>MARIROSA LAMAS, *et al.*,<br><br>           Defendants. | CIVIL ACTION NO. 19-241 |

**MEMORANDUM OPINION**

Rufe, J.                                                                                             October 26, 2023

       Plaintiff, a former Corrections Officer Trainee at the State Correctional Institution Chester ("SCI-Chester"), has filed a proposed collective action on behalf of similarly situated Corrections Officer Trainees and Corrections Officer 1s (collectively "COs"), alleging violations of the federal Fair Labor Standards Act[1] ("FLSA") and the Pennsylvania Minimum Wage Act[2] ("PMWA") by Defendants Marirosa Lamas, Michael Wenerowicz and Ty Stanton. Plaintiff claims that Defendants required COs to perform approximately 45 minutes of unpaid post-shift work each day. Defendants have moved for summary judgment, asserting that they are entitled to sovereign immunity.

       Immunity under the Eleventh Amendment goes to the jurisdiction of the Court and therefore must be resolved before the Court reaches any conclusions on the merits or rules on Lee's motion for conditional certification.[3] In other words, the Court must determine first

---

[1] 29 U.S.C. § 207(a).

[2] 43 Pa. Stat. § 333.104.

[3] *Edelman v. Jordan*, 415 U.S. 651, 677–678 (1974).

whether the Commonwealth is the real party in interest in this case. Because the suit is in effect one against the Commonwealth, Defendants' motion will be granted.

I. **BACKGROUND**

Lee was employed as a Corrections Officer Trainee at SCI-Chester from October 2017 until his termination in October 2018.[4] COs are assigned to eight-hour shifts that run from 6:00am to 2:00pm, from 2:00pm to 10:00pm and from 10:00pm to 6:00am.[5] The incoming officers relieve the working officer under the supervision of lieutenants and the shift commander.[6] Plaintiff alleged in the Amended Complaint that, once an officer's shift has ended, the officer is required to perform work-related activities, including inventorying and returning their equipment; debriefing the replacement officer about events that occurred last shift; completing paperwork; scanning their fingerprints; and entering their payroll number to clock out.[7]

Plaintiff originally filed this action against the Department of Corrections ("DOC").[8] After the DOC moved to dismiss on the grounds of sovereign immunity,[9] Plaintiff filed an Amended Complaint that named Marirosa Lamas, Michael Wenerowicz, and Ty Stanton in their individual capacities. During Lee's employment, Lamas served as the Superintendent of SCI-Chester; Wenerowicz served as the DOC's Regional Secretary; and Stanton served as the DOC's Bureau of Human Resources Director. Lee alleges that all three Defendants have significant

---

[4] Am. Compl. [Doc. No. 8] ¶ 5.
[5] Am. Compl. [Doc. No. 8] ¶ 13.
[6] Lamas Resp. to Pl.'s Interrog. No. 4, Exhibit A [Doc. No. 29-4] at 3.
[7] Am. Compl. [Doc. No. 8] ¶ 16.
[8] Doc. No. 1.
[9] Doc. No. 2.

responsibility for "devising, directing, implementing and supervising the wage and hour practices and policies relating to Corrections Officer Trainees and CO1s."[10]

Defendants moved to dismiss for lack of jurisdiction under the Eleventh Amendment.[11] The Court dismissed Defendants' motion to allow for development of the record.[12] The Court then held a scheduling conference, and approved the parties' request for bifurcated discovery.[13] The first stage of discovery was limited to factual matters related to conditional certification, including the number of Collective Group members, the Collective Group members' job descriptions, wage and hour policies and procedures, relevant training provided to the Collective Group and written and verbal complaints made by the Collective Group members about overtime work or wages.[14] The second stage of discovery would include Parties' depositions, full discovery on the merits and damages, and any needed expert testimony. This would have occurred after the Court ruled on conditional certification.

After the initial discovery period, Lee moved for conditional certification of a collective action under the FLSA[15] and Defendants moved for summary judgment.[16] Lee responded to Defendants' motion with a declaration under Federal Rule of Civil Procedure 56(d) and requested that the Court defer consideration of Defendants' motion until after the second stage of discovery was completed. The Court deferred both Lee's motion for conditional certification and

---

[10] Am. Compl. [Doc. No. 8] ¶ ¶ 6-8.
[11] Doc. No. 12.
[12] Doc. No. 16.
[13] Doc. No. 21.
[14] Doc. No. 20.
[15] Doc. No. 28.
[16] Doc. Nos. 29–30.

Defendants' motion for summary judgment until the parties engaged in a limited merits discovery period focusing on resolving the question of immunity under the Eleventh Amendment.[17] Since the discovery has concluded, Plaintiff has responded to Defendants' motion for summary judgment[18] to which Defendants filed a reply.[19]

## II. STANDARD OF REVIEW

A court will award summary judgment on a claim where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[20] A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[21] A fact is "material" if resolving the factually dispute "might affect the outcome of the suit under the governing law."[22]

The Court's role on a motion for summary judgment is not to weigh the evidence or make a credibility determination.[23] Instead, the Court "must view the facts in the light most favorable to the non-moving party."[24] Nevertheless, the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record.[25] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[26] This

---

[17] Doc. No. 34.

[18] Doc. No. 47.

[19] Doc. No. 49.

[20] FED. R. CIV. P. 56(a).

[21] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[22] *Id*.

[23] *Boyle v. County. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998).

[24] *Hugh v. Butler County. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

[25] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

[26] *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense."[27] Therefore, if, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine dispute as to any material fact, summary judgment is appropriate.[28]

### III. DISCUSSION

#### A. FLSA Claim

Under the Eleventh Amendment, suits against states are barred in federal court absent waiver by the state or valid congressional override.[29] Neither waiver nor abrogation is present here. Pennsylvania has expressly declined to waive its Eleventh Amendment immunity.[30] In *Seminole Tribe v. Florida*, the Supreme Court held that Congress could only abrogate a State's constitutional immunity through its Section 5 enforcement power under the Fourteenth Amendment.[31] It has since held that FLSA does not include explicit abrogation of a state's Eleventh Amendment immunity.[32]

---

[27] *Walden v. Saint Gobain Corp.*, 323 F. Supp.2d 637, 641 (E.D. Pa. 2004) (citing *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir. 1976)).

[28] *Wisniewski v. Johns–Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

[29] *Tennessee v. Lane*, 541 U.S. 509, 517 (2016). *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (citing *Ford Motor Co. v. Department of Treasury of Indiana*, 323 U.S. 459, 464 (1945)); *see also Karns v. Shanahan*, 879 F.3d 504, 512 (3d Cir. 2018) (quoting *Lombardo v. Pa., Dept of Pub. Welfare*, 540 F.3d 190, 194 (3d Cir. 2008)); *Hans v. Louisiana*, 134 U.S. 1 (1890).

[30] *See Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (citing 42 Pa. C.S. § 8521(b)).

[31] *Seminole Tribe v. Florida*, 517 U.S. 44, 65 (1996).

[32] *Alden v. Maine*, 527 U.S. 706, 712 (1999); *see also Michigan Corr. Org. v. Michigan Dep't of Corr.*, 774 F.3d 895, 902 (6th Cir. 2014); *Nunez v. Indiana Dep't of Child Servs.*, 817 F.3d 1042, 1043 (7th Cir. 2016).

Eleventh Amendment immunity extends to subunits of the state, including the DOC.[33] State officials sued in their official capacities for monetary damages enjoy immunity.[34] However, the Eleventh Amendment does not protect state officials from being sued in their individual capacities, "even if the actions which are the subject of the suit were part of their official duties."[35]

A suit against an official in her individual capacity may still be barred if the state or arm of the state is the "real party in interest."[36] The Supreme Court has clarified that it is "the entity's potential legal liability, rather than its ability or inability to require a third party to reimburse it, or to discharge the liability in the first instance, that is relevant" in determining whether an official is the real party in interest.[37] "[A] suit is against the sovereign if … the effect of the judgment would be to restrain the Government from acting, or to compel it to act."[38]

Lee has sued Lamas, Wenerowicz, and Stanton in their individual capacities.[39] The Third Circuit has held that "the [Family and Medical Leave Act's (FMLA's)] similarity to the FLSA

---

[33] *Fox v. Bayside State Prison*, 726 F. App'x. 865, 867–68 (3d Cir. 2018); *see also Kreutzberger v. Pennsylvania Dep't of Corr.*, 684 F. App'x. 107, 108 (3d Cir. 2017).

[34] *A.W. v. Jersey City Pub. Sch.*, 341 F.3d 234, 238 (3d Cir. 2003) (citations omitted); *see also Ford Motor Co. v. Dep't of the Treas.*, 323 U.S. 459, 464 (1945) ("[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.").

[35] *Slinger v. New Jersey*, 366 F. App'x. 357, 360 (3d Cir. 2010).

[36] *Regents of the Univ. of Cal. v. Doe,* 519 U.S. 425, 429 (1997).

[37] *Id.* at 431.

[38] *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101 n. 11 (1984).

[39] Lee originally sued the Department of Corrections before filing an Amended Complaint against these individuals. *See* Compl. [Doc. 1].

indicates that Congress intended for courts to treat the FMLA the same as the FLSA." [40] Consequently, there is no dispute as to whether individual public officials may be sued under FLSA.[41] The question for the Court is whether the Department of Corrections or SCI-Chester is the real party in interest, which would prevent the Court from exercising jurisdiction over the FLSA claim.

Defendants cite to *Luder v. Endicott*, a Seventh Circuit case in which state prison employees sued their supervisors in their individual capacities to recover wages under the FLSA for work performed before and after their shifts.[42] Although the decision in *Luder* is not binding on this Court, it is persuasive authority. The Seventh Circuit held that the FLSA claim was barred by the Eleventh Amendment.[43]

The Court previously considered *Luder* in ruling on Defendants' motion to dismiss.[44] In *Luder*, the defendants were following a DOC policy that was not in compliance with FLSA. Therefore, the *Luder* plaintiff, by suing the officials, sought "to accomplish exactly what they would accomplish were they allowed to maintain this suit against the state and did so successfully: they [were] seeking to force the state to accede to their view of the Act and to pay them accordingly."[45] In contrast, Lee alleged that Pennsylvania *did* have a FLSA-compliant

---

[40] *Haybarger v. Lawrence County Adult Probation and Parole*, 667 F.3d 408, 417 (3d Cir. 2012); *see also Luder v. Endicott*, 253 F.3d 1020, 1022 (7th Cir. 2001) (holding that public officials may be sued in their individual capacities under FLSA).

[41] *Hayburger,* 667 F.3d at 414 ("Accordingly, the FMLA regulations leave little doubt that individual liability is available under FMLA").

[42] 253 F.3d 1020, 1022 (7th Cir. 2001).

[43] *Id.* at 1025.

[44] Doc. No. 16.

[45] *Luder*, 253 F.3d at 1024.

timekeeping policy, but that the individuals themselves failed to follow the policy.[46] The Seventh Circuit stated that in such circumstances, a suit against an individual who failed to comply with a DOC policy would "advance rather than thwart state policy."[47] If Plaintiff could show that the individual Defendants failed to follow a DOC policy, then his FLSA claim against the individuals would not be barred by the Eleventh Amendment. Lee has failed to do so.

Lee contends that SCI-Chester deviated from FLSA-compliant policies, because "facility-wide internal systems and/or procedures…failed to capture employees' actual post-shift work time."[48] However, even if Plaintiff could establish this, without a showing that Defendants Lamas, Wenerowicz, or Stanton implemented a non-FLSA compliant policy, the real party in interest would be SCI-Chester. In other words, a suit individually against Lamas, Wenerowicz, or Stanton would have the same effect and purpose as a suit against SCI-Chester. Such a claim purely against a single prison facility would be barred by the Eleventh Amendment, just as a suit against the entire DOC would be.[49]

The summary judgment record shows that of the three Defendants, only Lamas worked at SCI-Chester. While Lamas was responsible for supervising and overseeing the prison, she was

---

[46] Am. Compl. [Doc. No. 8] ¶ 16.

[47] *Luder*, 253 F.3d at 1024; *see also Williams v. Richards*, No. 16-525, *2016* WL 5872450, at *3–4 (W.D. Pa. Oct. 7, 2016) (distinguishing *Luder* in a FLSA suit alleging that individual defendants failed to comply "with PennDOT's general policy of paying such employees for all time worked").

[48] Pl. Resp. to Defs.' Interrog. No. 8, Exhibit D [Doc. 29-7].

[49] *Fox v. Bayside State Prison*, 726 F. App'x. 865, 867–68 (3d Cir. 2018) ("The [Department of Corrections] is quintessentially an arm of the state and is funded by, controlled by, and accountable to the state. As a facility wholly owned and operated by the DOC, Bayside is similarly protected."); *see also Perez v. Chester CI*, No. 20-cv-4562, 2020 WL 6342769, at *2 (E.D. Pa. Oct. 29, 2020) (holding that a claim against SCI-Chester was barred).

"not personally aware of or responsible for any system used for timekeeping purposes."[50] Lamas, as well as Wenerowicz and Stanton, had no knowledge of Lee's concerns prior to this case.[51]

All DOC prisons use an "Identification Verification System" (IDVS) fingerprint system, which requires COs to scan their fingerprints upon entry and departure from the prison facility. Many prisons use the IDVS system to track time for payroll purposes.[52] It appears undisputed that SCI-Chester does not use IDVS for payroll purposes.[53] However, Plaintiff has not produced evidence as to SCI-Chester's specific timekeeping and payroll policies. Critically, Lee has failed to identify an overtime or time tracking policy at SCI-Chester that was implemented by Lamas, Wenerowicz, or Stanton. Wenerowicz and Stanton both oversaw multiple facilities[54] and plaintiff has not produced any evidence that Wenerowicz or Stanton in their individual capacities directed or helped implement any policy unique to SCI-Chester.

Lamas, as superintendent of SCI-Chester, was responsible for "overseeing and supervising all functions in the prison."[55] However, Plaintiff has not produced evidence that Lamas was directly responsible for setting any policies or procedures regarding overtime, timekeeping, and time reporting. Instead, the evidence shows that those policies were set by the DOC and officers' collective bargaining agreement.[56] It is undisputed that Lamas was

---

[50] Lamas Resp. to Pl.'s Interrog. No. 10, Exhibit A [Doc. No. 29-4].

[51] Lamas Decl. ¶ 9 [Doc. No. 29], *accord* Pl. Resp. to Defs.' Interrog. No. 3, Exhibit D, [Doc. No. 29-7]; Stanton Decl. ¶ 7 [Doc. No. 29]; *accord* Pl. Resp. to Defs.' Interrog. No. 5., Exhibit D, [Doc. No. 29-7]; Wenerowicz Decl. ¶ 6 [Doc. No. 29]; *accord* Pl. Resp. to Defs.' Interrog. No. 4., Exhibit D, [Doc. No. 29-7].

[52] Stanton Dep. Pl.'s Ex. 9 [Doc. No. 47-11] at 70–71, 139–145.

[53] Lamas Dep. Pl.'s Ex. 8 [Doc. No. 47-10] at 162–163.

[54] *See* Wenerowicz Decl. ¶ 3 [Doc. No. 29-3]; Stanton Decl. ¶¶ 3–4 [Doc. No. 29-2].

[55] Lamas Dep. Pl.'s Ex. 8 [Doc. No. 47-10] at 48–49.

[56] Lamas Dep. Pl.'s Ex. 8 [Doc. No. 47-10] at 170–171.

responsible for enforcing these policies. However, Plaintiff has failed to show that Lamas's enforcement of the policies was in clear violation of DOC policy, as there is nothing in the record to indicate that there was a DOC policy that requires facilities to use "IDVS" to track work. Nor is there any evidence that Lamas enacted a timekeeping policy in violation of a different DOC policy.

Indeed, Plaintiff has not provided evidence of the timekeeping and overtime policy at SCI-Chester during the relevant time period. Plaintiff alleges that Defendants maintained "facility-wide internal systems and/or procedures that failed to capture employees' actual post-shift work."[57] Plaintiff contends that "instead of using IDVS time data to calculate Corrections Officers' pay, SCI Chester typically paid Corrections Officers for their scheduled 8-hour shifts."[58] Plaintiff attempts to argue that SCI-Chester employees were subject to a facility-wide policy that paid them for eight-hour shifts, as opposed to compensating them for additional time within the secure perimeter. However, there is nothing in the record to support these arguments, and Plaintiff's own compiled document—the "IDVS Spreadsheet"—shows that Corrections Officers frequently were paid for more than eight hours in a shift.[59]

Plaintiff has not produced evidence as to how COs clock in and out, instead referring to the allegations of the Amended Complaint. Lamas testified in deposition that she did not know how hours were tracked for payroll purposes, and that recording and reporting time for payroll

---

[57] Pl. Resp. to Interrog. No. 8 [Doc. No. 29-7].

[58] Pl. Resp. Opp'n. to Def. Mot. for Summ. J. [Doc. 47-1] at 26. Stanton testified in deposition that pursuant to arbitration proceedings, "work" was "loosely defined as [the time] within the secure perimeter of a facility." Stanton Dep. Pl's Ex. 9 [Doc. No. 47-11] at 143.

[59] Exhibit 15 ("IDVS vs. PDOC Time") [Doc. No. 47-17].

purposes is handled by lieutenants and shift commanders.[60] Plaintiff has failed to show that COs were not paid for post-shift work, or that they were not paid overtime.[61] Taking Plaintiff's "IDVS Spreadsheet" at face value, it only shows that the timekeeping system differed from the IDVS system.[62] It does not demonstrate how time was kept, how overtime was calculated, or any policy by Defendants on these key issues. It does show that the COs frequently were paid for more than 8 hours per shift, contrary to Plaintiff's claim.[63]

Instead of producing evidence, Plaintiff asserts generally that Defendants are liable due to their chain of command or supervisory functions. According to Lee, since Defendants' job responsibilities included managing those who were present for shift changes and capturing work completed by officers for payroll purposes, Defendants are individually responsible for any potential failure to capture post-shift work. Lee has failed to show that the Defendants, either individually or collectively, implemented or adopted any payroll policy or procedure at SCI-Chester that contravened DOC policy.[64] Therefore, Defendants cannot be individually liable for

---

[60] Lamas Resp. to Pl.'s Interrog. No. 4, Exhibit A [Doc. No. 29-4] at 3.

[61] Lee mentions COs clocking-in and clocking-out for payroll purposes. In the Amended Complaint, Plaintiff states that he "routinely clocked-out and left work 45 minutes after his scheduled shift end-time" and that he "witnessed many other corrections Officer Trainees and CO1s at SCI-Chester clock-out and leave work approximately 45 minutes after their scheduled shift end-times." Am. Compl. [Doc. No. 8] ¶¶ 17-18. However, Lee has failed to produce evidence that COs were not compensated for their time when they *clocked out* late. He has only explained that COs sometimes clock-out late *after* completing post-shift work.

[62] Exhibit 15 ("IDVS vs. PDOC Time") [Doc. No. 47-17].

[63] Pl. Resp. Opp'n. to Def. Mot. for Summ. J. [Doc. 47] at 4–5.

[64] As Defendants point out, this case is quite distinct from *Haybarger v. Lawrence County Adult Probation and Parole* where the supervisor personally disciplined the Plaintiff, expressed that Plaintiff should work to improve her health, and ultimately terminated her. 667 F.3d 408, 410 (3d Cir. 2012). Similarly in *Stramaski v. Lawley*, the Fifth Circuit explained that there is a distinction between a claim against an individual defendant for actions specifically taken against the Plaintiff and a suit against higher-level officials, which would be "in fact a complaint about what the state had done." 44 F.4th 318, 325 (5th Cir. 2022).

FLSA violations, and the real party in interest in the lawsuit is the Commonwealth. The FLSA claim must be dismissed as barred by the Eleventh Amendment.

### B. PMWA Claim

Because Plaintiff's federal FLSA claim will be dismissed, his only remaining claim arises under state law. A court "may decline to exercise supplemental jurisdiction if…the district court has dismissed all claims over which it has original jurisdiction."[65] The decision of whether to exercise supplemental jurisdiction where a court has dismissed all federal claims is left to the court's discretion as "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right."[66] When only state law claims remain, "the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."[67]

Here, the federal claim has been dismissed for a lack of jurisdiction and the memoranda have focused primarily on the federal FLSA claim. Considering that the application of Pennsylvania wage laws to a Pennsylvania agency is particularly suited to resolution in the Pennsylvania courts, the Court will decline to exercise supplemental jurisdiction and Plaintiff's state-law claim under PMWA will be dismissed without prejudice to filing in the appropriate state court.

---

[65] 28 U.S.C. § 1367(c)(3).
[66] *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).
[67] *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

## IV. CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment will be granted as to the claim under the FLSA. Plaintiff's PMWA claim will be dismissed without prejudice. An order will be entered.